UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

CINDY NEELY and DENNIS NEELY,        )
    Plaintiffs,        )
          )   FILED UNDER SEAL
   vs.       )   1:07-cv-1094-LJM-JMS
          )
THE INDIANAPOLIS METROPOLITAN        )
POLICE DEPARTMENT and GREG           )
WILKERSON,                           )
    Defendants.        )

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   This matter comes before the Court on defendants', The Indianapolis Metropolitan Police Department (the "IMPD") and Deputy Greg Wilkerson ("Wilkerson") (collectively, the "Defendants"), Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Rule 56(c)").  In their Motion, the Defendants made several arguments that plaintiffs, Cindy Neely ("Cindy") and Dennis Neely ("Dennis") (collectively, the "Plaintiffs" or the "Neelys"), either conceded or waived in their response.  First, the Plaintiffs conceded that they failed to state a cognizable 42 U.S.C. § 1983 ("§ 1983") claim against the IMPD under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Pl.'s Br. at 19. Accordingly, the Court **GRANTS** the IMPD's Motion for Summary Judgment on all of Plaintiffs' claims.  In addition, the Plaintiffs failed to respond to Wilkerson's argument that he is immune from their malicious prosecution claim because he acted within the scope of his employment at all relevant times mentioned in the Complaint.  *See* Ind. Code. § 34-13-3-3(6), (8).  Furthermore, Plaintiffs failed to respond to Wilkerson's argument that probable cause existed for Dennis's arrest or, in the alternative, that § 1983 liability cannot attach to

Dennis's arrest because Wilkerson was not personally involved in the alleged constitutional deprivation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). When a plaintiff fails to "offer any response to a well developed and supported summary judgment argument that challenges a particular claim . . . [he] abandon[s] . . . that claim or issue." *Butler v. Indianapolis Metropolitan Police Department*, No. 1:07-cv-1103, 2009 WL 2841079, at *4 (S.D. Ind. Sep. 1, 2009) (Hamilton, C.J.) (citing *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005)). Accordingly, the Court **GRANTS** Wilkerson's Motion with respect to the Neely's malicious prosecution claim and Dennis's claim that Wilkerson violated his Fourth Amendment rights by arresting him without probable cause.[1] In addition, because the parties' dispute on summary judgment concerns the existence of probable cause, the Court **DENIES** the Plaintiffs' Motion to Strike Wilkerson's designated evidence on the grounds that the evidence contains hearsay. *See Jones v. U.S.*, 362 U.S. 257, 271 (1960) ("[H]earsay may be the basis for a warrant."), *overruled on other grounds by U.S. v. Salvucci*, 448 U.S. 83 (1980).

---

[1] The Plaintiffs also failed to respond to Wilkerson's argument that § 1983 liability cannot attach to the seizure of property at the Neelys' residence because Wilkerson was not personally involved in the alleged constitutional deprivation. *See Palmer*, 327 F.3d at 594 (requiring personal involvement in a constitutional deprivation for § 1983 to provide a remedy) lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). However, it is not the actual seizure of the Plaintiffs' property that is at issue. *See Neiman v. Keane*, 232 F.3d 577, 579 (7th Cir. 2000) ("A plaintiff cannot base a valid Fourth Amendment claim on an arrest made under a valid warrant."). Rather, the subject of the Plaintiffs' § 1983 claim is Wilkerson's actions in applying for the search warrants. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). Accordingly, Wilkerson's argument is misplaced.

The remaining issue that the parties dispute on summary judgment is the Plaintiffs' claim under § 1983 that Wilkerson violated their Fourth Amendment rights, resulting in Cindy's unlawful arrest and the unlawful search and seizure of their property.  The Court has considered the parties' arguments and rules as follows.

## I.  <u>BACKGROUND</u>

On September 13, 2005, the Marion County Superior Court issued an arrest warrant for Cindy (the "arrest warrant") based on Wilkerson's probable cause affidavit (the "arrest affidavit").  Dkt. No. 46-13 at 4.  The arrest affidavit describes illicit events that took place at Shizaams, a massage and tanning parlor owned and operated by Cindy.  Dkt. No. 46-12 at 5-8.  According to the arrest affidavit, Wilkerson investigated Shizaams while he was a deputy with the Marion County Sheriff's Department.  *Id.* at 5.  The arrest affidavit does not provide reasons for the investigation's initiation.  *Id.* at 5-8.

During the investigation, Wilkerson posed as a potential customer.  *Id.* at 5.  According to Wilkerson, on May 23, 2005, a Shizaams employee began to fondle his genitals after Wilkerson touched her vagina to "prove that [he] was not a police officer."  *Id.*  On another occasion, after informing Cindy that she was being cited for employing a seventeen-year-old female in a massage parlor, Cindy stated, "can you just go back to your office and take care of this, if you do the girls will take care of you[.]"  *Id.* at 6 (internal quotation marks omitted).  *Id.*  Cindy then asked Wilkerson which girl he would like to be with, and Wilkerson indicated that he preferred "Toni."  *Id.*  Toni agreed to go out with Wilkerson to "keep the police off [Shizaams'] back."  *Id.*  Cindy later contacted Wilkerson to inquire as to whether Wilkerson would "take care of the problem . . . ."  *Id.*

3

On August 2, 2005, Wilkerson met Cindy at Shizaams. *Id.* During this meeting, Cindy attempted to determine how much money it would take to keep Wilkerson from interfering with her business. *Id.* Cindy also confessed that she employed three or four girls who would perform "handjobs" on patrons. *Id.* Wilkerson agreed that "a couple hundred a week" would be sufficient to "protect" Shizaams. *Id.* at 7.

The arrest affidavit also states that Lieutenant William Lorah ("Lorah"), of the Marion County Sheriff's Department, received information from Mark E. Grubaugh ("Grubaugh") that Grubaugh's nineteen-year-old son paid for a "[h]and [j]ob" from a Shizaams employee. *Id.* Then, on August 8, 2005, Grubaugh went to Shizaams and asked for a massage. *Id.* About half-way through the massage, a Shizaams employee named "Christina" asked if he wanted any other favors. *Id.* Grubaugh told Christina that he only had $60.00, and Christina told him to come back when he had more money. *Id.*

In addition, according to the arrest affidavit, Wilkerson and Detective Brian Durham ("Durham") of the Marion County Sheriff's Department interviewed three unidentified witnesses. *Id.* Each of the witnesses stated that they received manual sex from Shizaams' employees in exchange for money. *Id.* at 7-8; Dkt. No.'s 46-6, -7, -8. Based on the foregoing information, Wilkerson purported to have probable cause to believe that Cindy committed the following crimes: promoting prostitution, in violation of Ind. Code § 35-45-4-4; corrupt business influence, in violation of Ind. Code § 35-45-6-2; and bribery, in violation of Ind. Code § 35-44-1-1. Dkt. No. 46-12 at 5.

In addition to the information contained in the arrest affidavit, Wilkerson designated other facts of which he alleges he was aware before he sought the warrant for Cindy's arrest. For instance, according to Wilkerson, prior to the date that he began investigating

4

Shizaams, the Marion County Sheriff's Department received a complaint that Shizaams' employees were performing manual sex on customers in exchange for money.  Wilkerson Aff. ¶ 4.  Wilkerson did not identify who voiced the complaint.  *Id.*  In addition, during the course of his investigation, Wilkerson became aware that Cindy had three prior convictions for prostitution, one of which involved fondling retired Indianapolis Police Department Officer Walter Sanders' genitals in exchange for money.  Wilkerson Aff. ¶ 6; *see also* Sanders Aff. ¶ 5.  Wilkerson also claims that he was aware that Cindy was violating a Marion County Superior Court injunction by operating Shizaams without a valid license from the City of Indianapolis.  Wilkerson Aff. ¶ 7.  Further, Durham claims that a Shizaams employee offered him manual sex in exchange for money, after he touched one of her breasts to "prove that [he] was not a police officer."  Durham Aff. ¶¶ 5-7.  However, it is not clear from the arrest affidavit whether Wilkerson was aware of this occurrence before he sought an arrest warrant for Cindy.  Wikerson Aff. ¶ 10.

Wilkerson also designated a "true and accurate transcript" of a conversation that occurred between he and Cindy on August 2, 2005.  Wilkerson Aff. ¶¶ 14-15.  According to Wilkerson, the transcript is a compilation of his Kel-set recording, a tape recording purportedly made by Cindy Neely, and Wilkerson's own memory.  Wilkerson Aff. ¶ 15.  Wilkerson asserts that the transcript supports his version of the events outlined above. Dkt. No. 46-3.

Cindy's version of the events that took place at Shizaams between May 23, 2005, and August 2, 2005, differs from Wilkerson's in almost every respect.  According to Cindy, on May 23, 2005, Wilkerson came into Shizaams posing as "Montel."  Cindy Dep. at 37-38. Wilkerson requested a swedish massage, and Nancy Tidwell ("Tidwell") began the

5

massage with Wilkerson lying on his stomach.  Tidwell Dep. at 57, 60, 62.  While Tidwell

was massaging Wilkerson, Wilkerson grabbed Tidwell's crotch.  *Id.* at 60.  Tidwell asked

Wilkerson what he was doing, and Wilkerson replied, "Oh, that's not allowed?"  *Id.*  Tidwell

told him that such behavior was not allowed and that if Wilkerson tried to "do something

else" the massage would end.  *Id.*  Wilkerson then rolled over on his back to have the fronts

of his legs massaged.  *Id.* at 61.  During this part of the massage, Wilkerson became

"aroused."  *Id.*  He asked Tidwell if she was going to "do anything."  *Id.*  Tidwell was not

sure what he was referring to and Wilkerson asked, "[Y]ou don't do blow jobs?"  *Id.*  Tidwell

assured him that Shizaams did not offer that kind of service.  *Id.*  Then, there was a knock

on the door and several officers told Tidwell that she needed to exit the room.  *Id.* at 64.

One of the officers asked Tidwell where the money was that Wilkerson had given to her and

Tidwell replied, "[W]hat money?"  *Id.* at 66-67.  Regardless, the officers issued Tidwell a

ticket for prostitution.  *Id.* at 67-68; Wilkerson Dep. at 19.  The officers frightened Tidwell

so much that she defecated in her pants.  Tidwell Dep. at 69.

On the same date, Michelle Raines ("Raines") filled in as a masseuse for an absent

Shizaams employee.  Raines Dep. at 14-15.  Her first client identified himself as "Bobby";

but, according to Cindy, "Bobby" was Durham.  *Id.* at 17; Cindy Dep. at 58.  Ten minutes

into the massage, Durham flipped over onto his back and grabbed Raines's hand to place

it on his penis.  Raines Dep. at 16.  Raines yanked her hand away, but Durham grabbed

it back.  *Id.*  Raines told Durham that if he did that again the massage was over.  *Id.*  Then,

there was a knock on the door.  *Id.* at 18.  When Raines opened it, Durham and Deputy

Pascal Arnes ("Arnes") identified themselves as police officers.  *Id.*  The officers issued

Raines a ticket for prostitution.  *Id.* at 23; Cindy Dep. at 67-68.  They threatened to call

6

Child Protective Services to take custody of Raines's son.  Raines Dep. at 24.  However, they told her that she could keep her son if she agreed to solicit money from Shizaams' patrons in exchange for promises to perform sex acts.  *Id.* at 27.

Both Raines and Tidwell agreed to solicit money from Shizaams' patrons in exchange for promises to perform sex acts.  Tidwell Dep. at 77.  Tidwell began by asking a patron if he wanted anything "extra" with his massage.  *Id.* at 80, 86.  The gentleman indicated that he would pay for sex and offered Tidwell $200.00.  *Id.* at 82, 86.  Tidwell took the money and gave it to Durham.  *Id.* at 82-83.  There is no evidence that Durham inventoried this money with the Marion County Sheriff's Department.  Durham and Wilkerson entered the massage room and took the gentleman into the "back room."  *Id.* at 85.  The officers told Tidwell to "do at least one more," or they would "take [her] down."  *Id.* at 86.  Tidwell was crying and protested that she could not do it.  *Id.* at 87.  The officers insisted, and Tidwell asked a second massage customer if he wanted "anything extra."  *Id.* The gentleman told her no, and Tidwell thought he could smell the feces in her pants.  *Id.* Tidwell told the officers that the second gentleman refused her offers, but they insisted that she go back into the massage room and keep asking.  *Id.* After repeated offers, the second gentleman eventually requested oral sex and gave Tidwell $140.00 or $160.00.  *Id.* at 89. Tidwell collected the money, but when she exited the massage room to hand the money over to the officers, they were gone.  *Id.* at 89-90.

The first Shizaams patron from whom Raines solicited money immediately agreed to pay $200.00 in exchange for sex.  Raines Dep. at 28.  Altogether, Raines solicited money from three or four Shizaams patrons in exchange for promises to perform sexual acts.  *Id.* at 26-27.  Raines gave "$300[.00] or $400[.00]" to the officers.  *Id.* at 29-31.  There

is no evidence that the officers inventoried the money with the Marion County Sheriff's Department.

Each time a customer entered Shizaams the officers would run and hide in the tanning rooms shouting, "[W]e got another one, we got another one!"  Tidwell Dep. at 88. The entire episode took place on May 23, 2005.  Raines Dep. at 27.  Before leaving that day, officer Johnny Williams ("Williams") asked to receive free tanning at Shizaams.  *Id.* at 47.  Other officers also asked for free tanning for themselves and their girlfriends, and two or three officers' names were entered into Shizaams' computer to receive free tanning.  *Id.* at 47, 49.

After the events that took place on May 23, 2005, Wilkerson returned to Shizaams on July 20, 2005, and requested a massage.  Tidwell Dep. at 97-98.  Tidwell informed the other Shizaams employees who were working that day that Wilkerson was a "dirty cop." *Id.* at 98.  Wilkerson grew impatient while waiting for his massage and told Tidwell to "get the fuck up here, get up here now."  *Id.* at 99.  Tidwell called Wilkerson a "dirty cop" to his face, and Wilkerson responded that he could "take [her] downtown for obstruction of justice[.]" *Id.* at 100.  A Shizaams employee named "Toni" called Cindy, and Cindy arrived shortly thereafter.  *Id.* at 103.  While Cindy was en route to Shizaams, Wilkerson asked Toni for her telephone number and she refused to give it to him.  *Id.* at 105.  Durham gave Tidwell his telephone number and wanted her to call him.  *Id.*

When Cindy arrived, Wilkerson spoke with her about employing an underage girl at a massage parlor.  *Id.* at 106.  Cindy told Wilkerson that the girl he was referring to did not perform massages, she only helped out with the tanning aspect of Shizaams.  *Id.* at 108. Cindy denies that she asked one of her employees to date Wilkerson in exchange for

8

Wilkerson overlooking violations of the law.  Cindy Dep. at 48; Tidwell Dep. at 108.  She only asked Wilkerson if he was going to "take care of that problem with the underage worker."  Cindy Dep. at 81-82.  Then, Cindy found out that "there wasn't [a] problem because [she] didn't have to have them of age as long as they ran the tanning part and they weren't massaging and if there was a separate door, which there was."  *Id.* at 79. Wilkerson told Cindy that she needed to apply for a license to practice massage therapy. Cindy Dep. at 20.  Cindy did not believe she needed a license to practice massage therapy, but applied for one upon Wilkerson's insistence.  *Id.* at 23.

On August 2, 2005, Wilkerson called Shizaams and asked to speak with Cindy. Tidwell Dep. at 112.  Tidwell told Wilkerson that Cindy was unavailable, but Wilkerson demanded that Cindy meet him at Shizaams at 1:00.  *Id.* at 113.  Cindy arrived at Shizaams before 1:00, and Tidwell told her to record her conversation with Wilkerson.  *Id.* at 114.  Tidwell purchased a recorder from Radio Shack, which Cindy placed in her purse. *Id.* at 115-116.

Although the Plaintiffs agree that Wilkerson's proffered transcript of the parties' August 2, 2005, conversation is true and accurate, Pl.'s Br. at 7 n.2, the Plaintiffs argue that the transcript supports their version of the events outlined above.  However, the Plaintiffs do not dispute the fact that Cindy agreed to pay Wilkerson "a couple hundred a week" so that she "didn't have to worry about the cops[.]" Pl.'s Br. at 13 (quoting Dkt. No. 46-3 at 11). It is also undisputed that before the warrant issued for Cindy's arrest, Cindy told Wilkerson that she would not pay him any money.  Wilkerson Dep. at 71, 73; Cindy Dep. at 114-115. In addition, Wilkerson admitted that Cindy never paid him during the course of his investigation.  Wilkerson Dep. at 71.  However, Wilkerson did not include information

9

regarding Cindy's subsequent refusal to pay him in the arrest affidavit.  Dkt. No. 46-12 at 5-8.

The Marion County Superior Court issued search warrants for Shizaams and Cindy's personal residence (collectively, the "search warrants") on September 13, 2005.  Dkt. No. 46-10 at 2-3; Dkt. No. 46-11 at 2-3.  The search warrants authorized the Marion County Sheriff's Department to seize a variety of business records.  *Id.*  The search warrants are based on Wilkerson's probable cause affidavit (the "search affidavit"), in which Wilkerson purported to have probable cause to believe that Cindy committed the following crimes: money laundering, in violation of Ind. Code § 35-45-15-5; corrupt business influence, in violation of Ind. Code § 35-45-6-2; promoting prostitution, in violation of Ind. Code § 35-45-4-4; theft, in violation of Ind. Code § 35-43-4-2; and failure to remit sales tax, in violation of Ind. Code § 6-2.5-9-3.  Dkt. No. 46-2 at 2.  In addition to the events recited in the arrest affidavit, the search affidavit states that Agent Rich Albrecht ("Albrecht") reviewed the Indiana Department of Revenue's database for information regarding Cindy.  Dkt. No. 46-2 at 5.  Albrecht's search revealed that Cindy reported proceeds from sales at Shizaams that were much lower than those typically reported by massage parlors.  *Id.* at 6-7.  The search affidavit also states that based on Wilkerson's and Albrecht's personal experience, sole proprietorships typically maintain their business records at the place of business or at the business owner's personal residence.  *Id.*  The Plaintiffs do not dispute the underlying facts of the search affidavit with respect to the information Albrecht gleaned from Cindy's tax records.  *See generally* Pl.'s Br. at 16-18.

On September 15, 2005, Wilkerson executed the search warrant at Shizaams and arrested Cindy.  Wilkerson Aff. ¶¶ 25, 27, 29.  Wilkerson oversaw the seizure of business

10

documents, $161.35, massage and tanning beds, a washer and dryer, and a computer from Shizaams.  *Id.* ¶ 27.  At the same time, other Sheriff's deputies executed the search warrant at the Neelys' personal residence.  *Id.* at ¶ 28.  According to Cindy, a wide variety of items were seized from their personal residence.  Cindy Dep. at 129-31.

## II. <u>STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary judgment are governed by Rule 56(c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh*

11

*Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. **DISCUSSION**

In Wilkerson's Motion, he argues that probable cause existed to support the issuance of the arrest warrant for either promoting prostitution, in violation of Ind. Code §§ 35-45-4-3, -4, or bribery, in violation of Ind. Code § 35-44-1(a)(1).   Although, in his pleadings in support of the Motion, Wilkerson did not frame the issue in terms of the veracity of the statements made in the arrest affidavit, by designating evidence outside of the arrest affidavit to support the Marion County Superior Court's finding of probable cause, he undertook an identical exercise.   *See generally* Def.'s Br. at 14-19; Def.'s Reply Br. at 6-10.   Cindy argues that the evidence, when viewed in the light most favorable to her, shows that Wilkerson unlawfully arrested her without probable cause.   However, because Cindy's arrest was made pursuant to a facially valid arrest warrant issued by a judicial officer, Wilkerson violated Cindy's Fourth Amendment rights only if he recklessly disregarded the truth in his representations to the Marion County Superior Court.   *Forman v. Richmond Police Dept.*, 104 F.3d 950, 963-64 (7th Cir. 1997); *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court instructed that in order to void a search warrant, the accused must make a "substantial preliminary showing" that the affiant made false statements in the warrant affidavit.   *Id.* at 156.   After the accused makes such a showing, the inquiry becomes:   "[W]ith the affidavit's false material set to one side, [is] the affidavit's remaining content . . . []sufficient to establish probable cause[?]"   *Id.* In *Forman*, the Seventh Circuit applied the *Franks* test in the context of an affiant's motion for summary judgment on an unlawful arrest claim.   *Forman*, 104 F.3d at 963-64.   The

13

Seventh Circuit instructed that district courts should "defer to the trial judge's probable cause determination unless [the § 1983 plaintiff] demonstrates that [the affiant's] affidavit was knowingly or intentionally false, or that [the affiant] drafted the affidavit with a reckless disregard for the truth." *Id.* at 964. The *Forman* court held that "[b]ecause there is no genuine issue of material fact regarding whether [the affiant] knowingly or recklessly provided false information on the affidavit, . . . [the plaintiff's § 1983 claim] against [the affiant] must fail." *Id.* Thus, the issue in *Forman* was resolved using the same summary judgment standard with which the Court is well versed. *Id.* Accordingly, the Court will first consider whether the Plaintiffs have raised a genuine issue of material fact that Wilkerson knowingly provided false information in the arrest affidavit. *Id.* Then, the Court will consider whether, with the affidavit's questionably false material set to one side, there is still sufficient content to establish probable cause for either of the charges that Wilkerson discusses in his briefs. *Id.* Lastly, the Court will consider whether Wilkerson's belief in the existence of probable cause to support the charges was so unreasonable as to remove his actions from the shield of qualified immunity. *Id.*

As it pertains to the charge of promoting prostitution, the arrest affidavit states that Cindy's employees offered Wilkerson, his fellow officers, and other Shizaams patrons sexual favors in exchange for money. Dkt. No. 46-12 at 5-8. To support the truthfulness of the facts contained in the arrest affidavit, Wilkerson designated his own affidavit and Durham's affidavit. Neither of these affidavits is particularly helpful to the Court on summary judgment, however, because according to the evidence designated by the Plaintiffs, the only time that Cindy's employees engaged in such behavior was on May 23, 2005, in order to acquiesce with Wilkerson's demands. Raines Dep. at 24-26; Tidwell Dep.

14

at 81.  Similarly, according to the evidence designated by the Plaintiffs, Durham attempted

to force a Shizaams employee to touch his genitals, Raines Dep. at 16, and was part of the

extortion scheme.  Tidwell Dep. at 82-83; *see Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.

2003) ("[S]ummary judgment cannot be used to resolve swearing contests between

litigants.").

      Wilkerson also designated transcripts from the interviews of the three unidentified

witnesses mentioned in the arrest affidavit, who all claimed to have paid for money in

exchange for sexual favors from Cindy's employees.  Dkt. Nos. 46-6, -7, -8.  However, it

is plain from the first page of each of the transcripts that the interviews were conducted by

Wilkerson and Durham.  *Id.*  There is no indication that any other party was involved in

transcribing the interviews.  *Id.*  In addition, none of the transcripts recite any detail, not

included in the arrest affidavit, that indisputably convinces the Court of the truth of the

statements made therein.  *Id.*  Furthermore, Wilkerson has not indicated that any of the

unidentified witnesses testified at a probable cause hearing.   In short, Wilkerson has

provided no reason for the Court to unquestionably rely on the transcripts.  *See U.S. v.

Brack*, 188 F.3d 748, 756 (7th Cir. 1999) (listing "the factors that suggest that a confidential

source's information is reliable.").  Altogether, the Court concludes that the Plaintiffs have

raised a genuine issue of material fact regarding whether the arrest affidavit falsely states

that Shizaams' employees offered patrons sexual favors in exchange for money.  *Forman*,

104 F.3d at 64.  With the arrest affidavit's disputed facts on this issue set aside, there is no

information left to establish probable cause that Cindy promoted prostitution at Shizaams.

*See Molina*, 325 F.3d at 968 (requiring that the allegedly false statements in the arrest

15

affidavit "were necessary to the judicial officers' determination that probable cause existed for [the plaintiff's] arrest[]."); *see also* Ind. Code §§ 35-45-4-3, -4.

Next, with respect to the bribery charge, the arrest affidavit states that Cindy offered Wilkerson sexual favors from her employees in exchange for his agreement not to issue Cindy a citation for employing an underage person in her massage parlor.  Dkt. No. 46-12 at 6.  Cindy denies that she employed an underage person in her massage parlor. Cindy Dep. at 79, 81-82, 106, 108.  Cindy and Tidwell also deny that Cindy offered Wilkerson sexual favors from her employees.  Cindy Dep. at 48; Tidwell Dep. at 108. Wilkerson did not designate any additional evidence to corroborate the arrest affidavit on this issue.  *See Payne*, 337 F.3d at 770 ("On summary judgment a court may not make credibility determinations[.]").  Accordingly, the Court concludes that the Plaintiffs have raised a genuine issue of material fact regarding whether the arrest affidavit falsely states that Cindy offered Wilkerson sexual favors from her employees in exchange for Wilkerson's agreement not to perform one of his official duties.  *See* Ind. Code § 35-44-1-1(a)(1). However, because the arrest affidavit provides additional information to support the bribery charge, the Court must proceed in its analysis.  *Molina*, 325 F.3d at 968.

The arrest affidavit also states that Cindy offered Wilkerson "a couple hundred a week" to "protect" Shizaams. Dkt. No. 46-12 at 7.  The Plaintiffs do not dispute that Cindy agreed to pay Wilkerson "a couple hundred a week" so that she "didn't have to worry about the cops[.]" Pl.'s Br. at 13 (quoting Dkt. No. 46-3 at 11).  However, the Plaintiffs argue that the money was not offered with the intent to control Wilkerson's "official" duties as a Marion County Sheriff's deputy.  *See* Ind. Code § 35-44-1-1(a)(1).  Rather, the money was offered to "escape from the clutches" of Wilkerson, who was "extort[ing] money from [Cindy's]

16

customers[.]"  Pl.'s Br. at 13-14.  In other words, the Plaintiffs allege that Wilkerson's sting operation at Shizaams was a farce and that he and his fellow officers pocketed the money that Cindy's employees were forced to solicit from Shizaams' patrons.  *See* Tidwell Dep. at 82-83, 98; Raines Dep. at 29.  For no other reason than to keep Wilkerson and his fellow officers from further exploiting her business, Cindy offered Wilkerson "a couple hundred a week[.]"  Pl.'s Br. at 13 (quoting Dkt. No. 46-3 at 11).

The issue becomes whether, in lieu of the dispute surrounding Cindy's intent, the Marion County Superior Court would have agreed that probable cause existed for the arrest warrant to issue.  *Forman*, 104 F.3d at 964 ("[A]n affidavit procured in part by tainted evidence is not necessarily invalid because the untainted information, considered by itself, may establish probable cause for the warrant to issue.").  The Court notes that this is not a case where the charges are so neatly separable that the Court can independently consider the facts relating to each charge.  *Cf. Forman*, 104 F.3d at 964 (addressing facts related only to gambling charges).  Stated otherwise, the Court's above conclusion that there is an issue of material fact regarding whether the arrest affidavit falsely states that Cindy's employees offered Shizaams patrons sexual favors in exchange for money affects the Court's analysis on the bribery charge.

In the arrest affidavit, the reason given for Cindy's offer to pay Wilkerson was that "she could have more girls if she did not have to worry about the police arresting them for prostitution."  Dkt. No. 46-12 at 7.  If, as Cindy argues, there were no illicit activities taking place at Shizaams, the reason for the alleged bribe would disappear.  *Id.*  In other words, if Cindy's version of the events that took place at Shizaams between May 23, 2005, and August 2, 2005, is accepted by the trier of fact, then the fact finder may also conclude that

17

Cindy only offered Wilkerson the money to prevent him from further exploiting her business. In addition, Wilkerson has not designated any evidence to conclusively establish that Cindy's offer was an attempt to control his "official" duties. Ind. Code. § 35-44-1-1(a)(1). Altogether, Cindy has designated enough evidence for a reasonable trier of fact to conclude that the Marion County Superior Court would not have agreed that probable cause existed for the arrest warrant to issue absent the alleged misrepresentations. *See Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) ("[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning . . . the reasonable inferences to be drawn from the[ facts]."). Accordingly, the Court concludes that the arrest affidavit does not contain sufficient undisputed information to, as a matter of law, establish probable cause on the bribery charge. *Forman*, 104 F.3d at 964.

When the Court sets aside all the information in the arrest affidavit that the Plaintiffs contend is false, there is no information left, as a matter of law, to establish probable cause for Cindy's arrest on either charge. The only question left to answer is whether, in lieu of the foregoing conclusions, Wilkerson is still entitled to qualified immunity. *Id.* In this case, it is self-evident that if Cindy's version of the facts is true, Wilkerson's belief in the existence of probable cause for Cindy's arrest was unreasonable and, therefore, his shield of immunity is lost. *See Neiman*, 232 F.3d at 580 ("[A]n officer is not immune from suit for procuring a warrant . . . when the officer recklessly disregards the truth in his representations to the judicial officer.") (internal quotation marks and citations omitted). Probable cause to believe that Cindy committed bribery required knowledge on the part of Wilkerson that Cindy was attempting to control his official duties when she offered him the

money.  *See* Ind. Code § 35-44-1-1(a)(1).  If the trier of fact accepts Cindy's version of the events that took place at Shizaams between May 23, 2005, and August 2, 2005, then it is reasonable for the fact finder to infer that Wilkerson knew the money Cindy offered him was not intended to control his official duties.  Rather, the money was offered to prevent him from further exploiting Cindy's business.  For the foregoing reasons, the Court **DENIES** Wilkerson's Motion with respect to Cindy's Fourth Amendment claim for unlawful arrest.[2]

Wilkerson also argues that the seizure of the Plaintiffs' property was not unlawful because he had probable cause to believe that, in addition to promoting prostitution and bribery, Cindy failed to remit Shizaams' sales taxes, in violation of Ind. Code § 6-2.5-9-3. Def.'s Br. at 20-21.  The same analysis that applied to Wilkerson's affidavit in support of the arrest warrant applies to his affidavit in support of the search warrants.  *Molina*, 325 F.3d at 968.  Setting aside all the information in the search affidavit that the Plaintiffs contend is false, the search affidavit states that "Albrecht reviewed the Indiana Department of Revenue['s] database" for information regarding Cindy.   Dkt. No. 46-2 at 5.  Albrecht's review revealed that Cindy reported proceeds from sales at Shizaams that were much lower than those typically reported by massage parlors.  *Id.* at 6-7.  Based on this information, Wilkerson purported to have probable cause to believe that Cindy failed to remit Shizaams' sales taxes.  *Id.* at 2.

---

[2] Contrary to Wilkerson's assertion, the existence of probable cause that Cindy violated Ind. Code § 6-2.5-9-3 by failing to remit Shizaams' sales taxes would not change the Court's analysis on this issue, as Cindy was not arrested on that charge. Dkt. No. 46-12 at 2-4 (charging information); *cf. Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003) ("The presence of probable cause to arrest Ochana for any offense with which he was charged (or any closely-related charge) . . . bars his unlawful arrest claim under § 1983.").

Once again, the issue becomes whether the Marion County Superior Court would have agreed that probable cause existed for the search warrant to issue based only on these facts. *Forman*, 104 F.3d at 964. The Plaintiffs fail to direct the Court to any relevant authority in support of their argument that probable cause for the failure to remit sales taxes charge did not exist. *See Beauchamp*, 320 F.3d at 743 ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest[.]"). Regardless of whether the search affidavit was sufficient to support the probable cause necessary for the search warrant, Wilkerson is entitled to qualified immunity on this claim. *See Forman*, 104 F.3d at 964 (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."). For the foregoing reasons, the Court **GRANTS** Wilkerson's Motion with respect to the Plaintiffs' Fourth Amendment claim that Wilkerson subjected them to an unlawful search and seizure of their property.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the defendant's, The Indianapolis Metropolitan Police Department, Motion for Summary Judgment. Plaintiffs', Cindy Neely and Dennis Neely, Complaint against The Indianapolis Metropolitan Police Department is **DISMISSED WITH PREJUDICE**. In addition, defendant's, Deputy Greg Wilkerson, Motion for Summary Judgment is **GRANTED** with respect to plaintiffs' malicious prosecution claim and Dennis Neely's claim that Wilkerson violated his Fourth Amendment rights by arresting

20

him without probable cause.  Furthermore, because the parties' dispute on summary judgment concerns the existence of probable cause, the Court **DENIES** the Neely's Motion to Strike Wilkerson's designated evidence on the grounds that it contains hearsay.  Lastly, the Court **DENIES** Wilkerson's Motion for Summary Judgment with respect to Cindy's Fourth Amendment claim for unlawful arrest, but the Court **GRANTS** Wilkerson's Motion with respect to the Neely's Fourth Amendment claim that Wilkerson subjected them to an unlawful search and seizure of their property.

Going forward, the only issues to be resolved by the trier of fact concern Wilkerson's individual § 1983 liability stemming from his actions to procure the warrant for Cindy's arrest.[3]  The fact finder will have to determine: 1) whether Wilkerson knowingly provided false information in the arrest affidavit; 2) whether, with the arrest affidavit's false material set to one side, there is still sufficient content to establish probable cause to believe that Cindy either promoted prostitution, in violation of Ind. Code §§ 35-45-4-3, -4, or committed bribery, in violation of Ind. Code § 35-44-1(a)(1); and 3) whether Wilkerson's belief in the existence of probable cause to support the charges was so unreasonable as to remove his actions from the shield of qualified immunity.  *Forman*, 104 F.3d at 963-64.

Wilkerson is **ORDERED to SHOW CAUSE** on or before Friday, December 11, 2009, why this Order should not be made public.

---

[3] Dennis Neely does not have standing to pursue this claim.  *Doe v. County of Montgomery, Ill.*, 41 F.3d 1156, 1159 (7th Cir. 1994).  Accordingly, Dennis Neely's Complaint is **DISMISSED**.

IT IS SO ORDERED this 4th day of December, 2009.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Richard G. McDermott
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
rmcdermo@indygov.org

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org

John C. Ruckelshaus
RUCKELSHAUS  KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com